FILED
DISTRICT COURT OF GUAM

NOV 1 6 2007

JEANNE G. QUINATA
Clerk of Court



IN THE DISTRICT COURT OF GUAM

FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA )
)
      Plaintiff )
)
      v. )
)
HONOFRE J.O. CHARGUALAF )
)
      Defendant )
_____ )

CV-07-00032

Civil Case No. # 99-00012-JSU
(Crim. Case No. # 95-00054)


DEFENDANT'S MOTION FOR RELIEF FROM
A DEFECTIVE § 2255 JUDGEMENT,
PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE, RULE 60(b)(4).


By: Honofre J.O. Chargualaf
    Reg. No. # 01107-093
    U.S.P. POLLOCK
    P.O. BOX 2099
    POLLOCK, LA. 71467

    Defendant/Petitioner

# TABLE OF CONTENTS

PAGE[S]:

I.   Introduction ......................................... 1

II.  Jurisdiction ......................................... 2

III. Background:

     a). Statement of Case ................................ 3

     b). Statement of Facts ............................... 4

IV.  Law and Arguments[s]:

     a). Unincorporated Guam not subject to the Commerce
         clause - Article 1, Section 8, Clause 3 ............ 5

     b). The Article IV district court of Guam is not a
         court of competent jurisdiction to decide upon
         Article III - "DISTRICT COURT OF THE UNITED STATES"
         matters, where jurisdiction is founded and based on
         the Provision Article 1, section 8, Clause 3 of the
         United States Constitution......................... 7

     c). Subject matter jurisdiction cannot be waived....... 13

     d). Article IV territorial court judges in Article IV
         courts cannot administer Article III - DISTRICT
         COURT OF THE UNITED STATES judicial functions in
         Article IV territorial courts...................... 14

     e). The district court of Guam cannot enforce statutory
         PENALTIES under Title 18 USCS § 924 (c) of the
         Federal Firearm Statute in relation to "STATES",
         where its jurisdiction is dependent on the
         Constitutional Provision - Art. 1, §. 8, Cl. 3 of
         the United States Constitution..................... 15

     f). Where the alleged federal firearm offenses were
         purely and wholly "local" matters of Guam's own
         territorial law, and should have been remanded
         to the SUPERIOR COURT OF GUAM, a court of Original
         and competent jurisdiction in the "Original"
         proceedings in Superior Court Case No. # CF 0006-95.
         Where the goverment of Guam can only act within
         the sphere of The Organic Act of Guam. Title 48
         USCA, §. 1421 et. seq. ............................ 17

     g). Lack of Commerce Clause in relationship to "STATE".. 19

V.   GROUNDS FOR RELIEF, AND THE RELIEF GRANTED.............. 24

VI.  CONCLUSION ........................................... 26

Case 1:07-cv-00032   Document 1   Filed 11/16/2007   Page 2 of 43

# TABLES OF AUTHORITIES

CASES:                                                                    PAGES:

Adams Express Co. v . Denver & R.G. Ry.Co., 16 F. 712
(1883) ................................................... 11

Agana Bay Dev. Co., Ltd., v. Supreme Court of Guam,
529 F.2d 953 (9th Cir. 1976)...................... ....12 ,18

Anderson v. Mullaney, 191 F.2d 123 (9th Cir. 1951)........   6

Atlantic Cleaners & Dyers v. U.S., 286 U.S. 427, 76 L.Ed
1204, 52 S.Ct. 607 (1932)................................. 6,
Barusch v. Calvo, 685 F.2d 1199, 1202 (9th Cir. 1982)..... 20
Benner v. Porter, 50 U.S. 235, 13 L.E 119 (1850).......... 9,

Bordenelli v. U.S., 233 F.2d 120 (9th Cir. 1956).......... 18

Buscaglia v. Ballester, 162 F.2d 805 (1st. Cir. 1947)......6,

Butz v. Mendoza-Powers, 474 F.3d 1193 (9th Cir. 2007)...... 2

Callwood v. Callwood, 127 F.SUPP 179 (1954)............... 9,

Downes v. Bidwell, 182 U.S. 244, 45 L.Ed 1088, 21 S.Ct.
(1901) ..................................................12 ,15

Eldridge v. Richfield, 247 F.SUPP 407 (1965)............. 14

Exparte Bakelite Corp., 279 U.S. 438, 73 L.E 789, 49 S.Ct
411 (1929) ............................................... 14

Glidden v. Zdnok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed 2d
671 (1962) ............................................... 14

Gonzales v. Crosby, 545 U.S. 524, 162 L.Ed 2d 480, 125
S.Ct. 2641 (2005)........................................ 2

Harlow v. U.S, 301 F.2d 369 (5th Cir. 1962)............... 12

Hubbard v. Ammerman, 465 F.2d 1169 (5th Cir. 1972)........ 10

Huntington v. Attrill, 146 U.S. 657, 36 L.Ed 1123, 13
S.Ct. 224 (1892)......................................... 15

International longshoreman's & Warehouseman's Union v.
Wirtz, 170 F.2d 183 (1948)............................... 11,

James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119
71 L.Ed 569, 47 S.Ct. 308 (1927)......................... 15

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,
128 L.Ed 391, 114 S.Ct. 1673 (1994)...................... 2

Mailloux v. Mailloux, 554 F.2d 979 (9th Cir. 1977)..10,11,17,19

CASES:                                                PAGES:

Maxwell v. Federal Gold & Copper Co., 155 F. 110
(8th Cir. 1907)........................................ 11

McAllister v. U.S., 141 U.S. 174, 35 L.Ed 693, 11 S.Ct.
949 (1891).......................................... 12

McCulloch v. Marineros De Honduras, 372 U.S. 10, 9 L.Ed
547, 83 S.Ct. 671 (1963)................................. 16

Mookini v. U.S., 303 U.S. 201, 82 L.E 748, 58 S.Ct. 543
(1938)............................................... 8,9

Nguyen v. U.S., 538 U.S. 69, 156 L.Ed 2d 64, 123 S.Ct.
2130 (2003)......................................... 14

O'Donoghue v. U.S., 289 U.S. 516, 77 L.Ed 1356, 53 S.Ct.
740 (1933)........................................... 9,

Peterson v. Ball, 74 A.L.R. 187 (1931)................... 15

Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285
(9th Cir. 1985)........................... 5,6,7,16,17,21,22

Sayre & Company v. Riddell, 395 F.2d 407 (9th Cir. 1968)
...................................................5,

Starklof v. U.S.,20 F.2d 32 (9th Cir. 1927).............. 11

Steckle v. Lurie, 185 F.2d 921 (6th Cir. 1950)........... 9,

Territory of Guam v. Olsen, 431 U.S. 195, 52 L.Ed 2d 250
97 S.Ct. 1774 (1977)................................8,17

The Corp. of New Orleans v. Winter, 14 U.S. 91, 4 L.Ed
44 (1816)........................................... 15

U.S. v. Bell, 90 F.3d 320 (8th Cir. 1996)............ .16,23

U.S. v. Bordallo, 857 F.2d 519 (9th Cir. 1988)........... 21

U.S. v. Cotton, 535 U.S. 625, 152 L.Ed 2d 860, 122 S.Ct.
1781 (2002)......................................... 14,25

U.S. v. Lee, 159 F.SUPP 2d 1241, (D.C. Hawai'i 2001)... 11,12

U.S. v. McMillan, 165 U.S. 504, 41 L.E 805, 17 S.Ct. 395
(1897)............................................... 9,

U.S. v. National Dairy Prod. Corp., 372 U.S. 29, 9 L.Ed
2d 561, 83 S.Ct. 594 (1963)............................ 16

U.S. v. Nukida, 8.F3d 665 (9th Cir. 1993)............... 14

U.S. v. Peter, 310 F.3d 709 (11th Cir. 2002)............. 14

(iii)

CASES:                                                          PAGES:

U.S. v. Rios, 140 F.SUPP 379 (1st. Cir. 1956)............ 7

U.S. v. Saunders, 641 F.2d 663, (9th Cir. 1980).......... 14

U.S. v. Seagraves, 100 F.SUPP 424 (D.C. Guam 1951)....... 8,

U.S. v. Wooley, 726 F.2d 1328 (9th Cir. 1983)............ 15

U.S. v. Wright, 15 F.R.D. 184 (1954).................... 11

Verlinden v. Central Bank of Nigeria, 461 U.S. 480, 76
L.Ed 2d 81, 103 S.Ct. 1962 (1983)...................... 24

Wells v. U.S., 214 F.2d 381 (5th Cir 1954).............. 9,


STATUTES:
18 USCS § 666 (b) ..................................... 21
Title 18 USCS § 921 et. seq........................ ...4,5,17,18,22

Title 18 USCS § 922 ............................... 3,21,22

Title 18 USCS § 924 ..............................3,15,16,23

Title 18 USCS §§ 921-930....................... 7,17,21
 Title 18 USCS § 3231................................. 10
Title 28 USCS § CHAPTER 5........................ 8,10,11

Title 28 USCS §§ 81 et. seq. ...................... 8,11

Title 28 USCS § 451................................. 8

Title 28 USCS § 1331............................ 5,17,24

Title 28 USCS § 1335................................. 4

Title 28 USCS § 2255..............................2,4,24
 Title 28 USCS Rule 60 (b)(4)...........................13
Title 48 USCA § 1421a.......................... 7,22

Title 48 USCA § 1421b........................... 13,12

Title 48 USCA § 1421b. (u)............... 1,5,12,18,25,26

Title 48 USCA §§ 1421 - 1424.....................5,7,20,24
Title 48 USCA § 1424 (b)...........................7,11,24
Title 48 USCA § 1469a ...........................7,15,22

Title 48 USCA § 1664 .............................. 6
Title 48 USCA § 1801............................... 19
Title 48 USCA § 731

Case 1:07-cv-00032    Document 1    Filed 11/16/2007    Page 5 of 43

GUAM CODE:                                                    PAGE[S]:

Title 10 .............................................3,18

UNITED STATES CONSTITUTION

Article 1, §. 8, Cl. 3 ..........1,4,5,13,16,17,20,22,23,24,25

Article III ...................................5,8,9,10,11,12

Article III, §. 1 ........................................10

Article IV .............................................9,10

Article IV, §. 3, Cl. 2 ..............................10, 1,12


RULES:

Federal Rules of Civil Procedure, Rule 60(b)(4) ......1,2,25,26

Federal Criminal Code and Rules (2006), Rule 54 (c)..........8

OTHER:

16 Va. J. Int'L., The Applicability of Federal
Law To Guam ................................................6

The Organic Act of Guam and Related Federal Laws
Affecting Government Structure ............................20

PUBLIC LAW:

Pub.L. 94-241, § 1, Mar.24, 1976, 90 Stat. 263 ..............19


EXHIBITS:

A - ......................................................4

B - ......................................................4

C - ......................................................4

D - ......................................................4

Honofre J.O. Chargualaf
Reg. # 01107-093
U.S. Penitentiary
P.O. Box 2099
Pollock, Louisiana. 71467

IN THE DISTRICT COURT OF GUAM

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| Honofre J.O. Chargualaf | ) | Civil Case No. DC # CV:99-00012-JSU |
| Petitioner | ) | Criminal Case No. # CR:95-00054-01 |
| v. | ) | |
| United States of America | ) | |
| Respondent | ) | |

Motion for relief from a void judgement, pursuant to Federal Rules of Civil Procedure 60 (b) (4), issued by a court that lacked subject matter jurisdiction to adjudicate federal firearms offenses that are based on the Constitutional Commerce Clause Provision – Article 1, Section 8, Clause 3 of the United States Constitution.

I. INTRODUCTION

Now comes, Honofre J.O. Chargualaf, pro se, to move this court

for relief from a void judgement pursuant to Federal Rules of Civil

Procedure 60 (b) (4), because the Habeas court in CV-99-00012-JSU

failed to address sua sponte in petitioner's initial § 2255 motion

as to whether it had subject matter jurisdiction to adjudicate federal

firearm offenses in counts 1, 2, 3, 5, and 6, in which its basis

is derived from the commerce clause of the United States Constitution,

where Congress, acting on behalf of The Organic Act of Guam, Title

48 U.S.C.A. § 1421b. (u), et. seq., has not extended to the insular

island area known as Guam, an "unincorporated" territory of the United

States.

(1)

## II. JURISDICTION

This court has the authority to assume jurisdiction under The Organic Act of Guam, and under Federal Rules of Civil Procedure Rule 60 (b) (4), to review the merits of this motion.

This motion does not raise any new claim. This is a "true" motion pursuant to Title 28 U.S.C.S., Federal Rules of Civil Procedure Rule 60 (b) (4), and is not to be treated as a second or successive § 2255 habeas motion.

Petitioner is not attacking his sentence or conviction. Therefore this petition is not the equivalent of a second or successive habeas motion per 28 U.S.C.S. § 2255, and cannot be subjected to the restrictions of such motions. This petitioner makes no federal habeas corpus "claim" within the meaning of § 2255. See Gonzales v. Crosby, 545 U.S. 524, 162 L.Ed 2d 480, 125 S.Ct. 2641 (2005).

Under Federal Rules of Civil Procedure Rule 60 (b) (4), petitioner request vacatur from this courts previous habeas judgement that was entered on August 9, 2001. Said judgement is void because the district court of Guam lacked subject matter jurisdiction. In Butz v. Mendoza-Powers 474 F.3d 1193 (9th Cir. 2007) the court held per Curium:

"When a district court dismisses with prejudice a petition for writ of habeas corpus under 28 USC § 2244 without reaching the merits of the claims raised therein, the petitioner may seek relief from a judgement through a motion under under Federal Rule of Civil Procedure 60 (b), because such motion is not the equivalent of a second or successive petition under the AntiTerrorism and Effective Death Penalty Act of 1996 ("AEDPA").

The Supreme Court held in Kokkonen v. Guardian Life Ins. Co. Of America, 511 U.S. 375, 128 L.Ed 2d 391, 114 S.Ct. 1673 (1994) that:

"It is to be presumed that a cause lies outside of the limited jurisdiction of the federal courts; the burden of establishing the contrary rest on the party asserting jurisdiction."

(2)

III. BACKGROUND

### a). Statement of the case

On October 28, 1994 petitioner was arrested by local police on the island of Guam for possession of a machine-Gun in violation of Guam local law 10 GCA HEALTH AND SAFETY CH. § 60102. Petitioner was later released early the following morning on October 29, 1994, pending a summons to appear in THE SUPERIOR COURT OF GUAM. On January 4, 1995 petitioner was arrested a second time for possession of an unregistered firearm with a silencing device in violation of Guam local law 10 GCA HEALTH AND SAFETY CH. § 60102. This time petitioner was then held in Guam's 'Territorial Detention Center'. On January 12, 1995 petitioner was indicted by the THE PEOPLE OF THE TERRITORY OF GUAM, whereupon petitioner appeared before THE SUPERIOR COURT OF GUAM in Case No. # CF 0006-95 where he was arraigned and released after posting bail in THE SUPERIOR COURT pending trial.

On March 29, 1995 a second indictment was issued out, this one out of the district court of Guam against the petitioner for the same offenses. A warrant was then issued and petitioner was subsequently arrested by federal agents on March 30, 1995 while on bail from Guam SUPERIOR COURT. On April 19, 1995 a superseding indictment from the district court of Guam was returned charging that the petitioner violated the following laws of the United States in Criminal Case No. # Cr: 95-00054-01 :

Title 18 USC § 922 (a)(4) in count 1; 18 USC § 922 (o)(1) in count 2; 18 USC § 922 (g)(3) in count 3; 18 USC § 924 (c) in count 5; 18 USC § 922 (g)(3) in count 6; and 18 USC § 924 (c) in count 9.

Jury trial was held on November 14, 1995. On November 20, 1995 the jury returned a verdict of guilt on all counts against the petitioner.

On May 10, 1996 petitioner was sentenced to a maximum term of 44 years. On July 18, 1997 the Ninth Circuit denied petitioner's direct appeal, and on August 9, 2001 petitioner's motion pursuant to 28 U.S.C.S § 2255 was denied also.

## b). Statement of the facts

On January 25, 1999 petitioner filed a habeas motion per § 2255 for the alleged firearms violations found in Title 18 USC § 921 et. seq. of the federal firearm statute, that are found in pages 2, 7, 9, 13, 14, and 16 in petitioner's initial § 2255, see EXHIBIT (A), and in pages 1, 2, 3, 6, 14, 16, 19, 20, 22 and 24 in the goverment's opposition to petitioner's § 2255 concerning the alleged violations, 18 USC §§ 922-924, where its jurisdiction to find a crime is based on the commerce provision Art. 1, §. 8, Cl. 3 of the United States Constitution. See EXHIBIT (B).

The Commerce provision contained in the firearm statute 18 USC § 921 et. seq. that are found in petitioner's indictment, see EXHIBIT (C); Judgement and Commitment Orders, as EXHIBIT (D), and in petitioner's initial § 2255 as EXHIBIT (A), should have alerted the habeas court to investigate as to whether the trial court had jurisdiction granted by the commerce clause provision to try the petitioner in Criminal Case No. # CR:95-00054-01 for the alleged violations, and whether the § 2255 court in Civil Action No. # 99-00012-JSU had jurisdiction under 18 USC 921 et. seq., and both Federal Question and Commerce jurisdiction under Title 28 USC § 1331, and jurisdiction under Fines, Penalties, or Forfeiture under 28 USC § 1335 to decide upon the trial courts findings in criminal matters that were raised in Civil Action No. # 99-00012.

Because 18 USC § 921 et. seq. is not a "free-standing" statute, the district court had a duty to investigate first as to whether it had jurisdiction, Art. 1, §. 8, Clause of the Federal Congressional Commerce Clause under that statute, and jurisdiction under 28 USC §.1331 Commerce and Penalties to address the issues of the commerce provision supporting the federal firearm statute.

Out of facts and necessity the § 2255 court must possess such jurisdiction, such as those provisions that were granted by Congress in The Organic Act of Guam, Title 48 USCA § 1421b. (u), as well as Article III standing to adjudicate the dispute in Civil Case No. # 99-00012-JSU that was born out of Criminal Case No. # CR:95-00054-01.


IV. LAW AND ARGUMENT

Civil Rule 60 (b) (4) authorizes petitioner to reopen his § 2255 judgement for jurisdictional defects that affected the entire foundation and outcome in Civil Case No.# 99-00012-JSU Ab initio because the habeas court failed to sua sponte hold the trial court that it lacked subject matter jurisdiction to adjudicate six (6) alleged firearm offenses in the indictment that were based on the commerce clause Article §. 8. Cl. 3 of the United States Constitution. Where said jurisdiction has not been extended to the government of Guam in its Organic Act, 48 USCA §§ 1421-1424 to adopt or exercise within its judiciary. Although appeared before the court, see petitioner's indictment as EXHIBIT (C), yet failed to address.


a). Unincorporated Guam not subject to the Commerce Clause

In Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285 (1985) the Ninth Circuit Court of Appeals held in part at 1285 that:

"Limitations which the commerce clause places upon the power of state governments to burden commerce do not apply to the government of Guam, because Guam is not a "state"." U.S.C.A. Const. Art. 1, §. 8, cl. 3.

In Sayre & Company v. Riddell, 395 F.2d 407 (1968 Guam), at 408, the 9th Cir stated "Limitations upon state legislatures by commerce clause are inapplicale to power of Congress to legislate with respect to territories of the United States"(5)

The United States Supreme Court in <u>Atlantic Cleaners & Dyers v. U.S.</u>, 286 U.S. 427, 76 L.Ed 1204 (1932) held that "Commerce in the District of Columbia and of the United States territories does not constitute interstate commerce". <u>Sakamoto</u> at 1287 stated that ". . . constitutional restrictions on the states' regulation of interstate commerce do not extend to Unincorporated territories". The clause in the federal constitution prohibiting imposition on duties or impost on imports is applicable only to States, and does not apply to an organized territory not incorporated into the United States, <u>Busgaglia v. Ballester</u>, 162 F.2d 805-807 (1st Cir. 1947).

In Title 48 USCA § 1664. under <u>Coastwise shipping laws of the United States inapplicable</u> it states:

"The provisions of law of the United States restricting to vessels of the United States the transportation of passengers and merchandise directly or indirectly from any port of the United States to another port of the United States shall not be applicable to commerce between the islands of American Samoa or between those islands and other ports under the jurisdiction of the United States."

See, The Applicability of Federal Law to Guam, by Arnold H. Leibowitz, 16 Va. J. Int'L. 1975-1976, which reads in part at pages 26, 28, and 29 as follows:

at 26.
THE DEGREE OF THE RESTRICTION DEPENDS ON THE APPLICABILITY OF THE CONSTITUTION TO GUAM, WHICH IS IN TURN DEPENDENT UPON THE DISTINCTION BETWEEN **UNINCORPORATED** AND **INCORPORATED** TERRITORIES.

at 28.
THE CONSTITUTION IS FULLY APPLICABLE TO AN **INCORPORATED** TERRITORY BUT TO AN **UNINCORPORATED** TERRITORY ONLY THE FUNDAMENTAL PROVISIONS APPLY, I.E., "THE GENERAL PROHIBITIONS"... .IN FAVOR OF THE LIBERTY AND PROPERTY OF THE CITIZEN . . .WHICH ARE AN ABSOLUTE DENIAL OF AUTHORITY . . .TO DO PARTICULAR ACTS."

at 29.
THE CONSTITUTIONAL RETRICTIONS UPON STATE WITH RESPECT TO THE REGULATIONS OF **INTERSTATE AND FOREIGN COMMERCE** AND THE LEVYING OF THE DUTIES OR IMPOST ON IMPORTS WERE HELD NOT TO APPLY. <u>ANDERSON v. MULLANEY</u>, 191 F.2d 123, (9th Cir. 1951), AFF'D, 342 U.S. 415 (1952).

(6)

Title 18 USCS §§9921-9930 of the federal firearm statute bears no reference to **Unincorporated** territories or, **Insular Areas** like Guam. As referred, defined, and termed to be by congressional policy in Title 48 USCA § 1421a., and at § 1469a. of that title to bring it within the jurisdiction of the commerce clause. Art. 1, §. 8,. cl. 3 of the United States Constitution.

See <u>United States v. Figueroa Rios</u>, 140 F.Supp. 376-379, (1st Cir. 1956), which is a historical landmark federal firearm case where the lower court at the time in the **unincorporated** territory of Puerto Rico during its "pre-commonwealth" transition, held true that the federal firearm statute is dependant on the distinction between **unincorporated** and **incorporated** territories.

THE ORGANIC ACT OF GUAM, SubChap 1, General Provisions, page 8 reads as follows:

"Because Guam is unincorporated territory having only the powers given it by Congress "it is in essence an instrumentality of the federal goverment "As such, the negative implications of the commerce clause of the United States Constitution do not apply to Guam. <u>Sakamoto v. Duty Free Shoppers Ltd.</u>, D.C Guam 1983, 613 F.Supp. 381, aff'd. 764 F.2d 1285, cert. den. 106 S.Ct. 1457, 89 L.Ed. 2d 715.

Property belonging to the United States that is appurtenant to and is not geographically part of the continental crust of the United States , is then outside the restrictions applicable to interstate commerce.

b). The "Article IV" district court of Guam is not a court of competent jurisdiction to decide upon <u>Article III</u> matters where jurisdiction is based on the Constitutional provision and requirement of Art. 1, §. 8, cl. 3, and Art. III, §. 1,& 2, Cl. 1 of the United States Constitution.

See title 48 USCA SUBCHAPTER IV-THE JUDICIARY § 1424 (b) under <u>Jurisdiction</u> where it reads:

The District Court of Guam shall have the jurisdiction of a district court of the United States, including, but not limited to, the diversity jurisdiction provided for in section 1332 of Title 28, and that of a bankruptcy court of the United States.

(7)

See Federal Criminal Code and Rules, 2006 edition, Rule 54 (c)

under Application of terms:

" 'District court' includes all district courts named in subdivision (a) of this rule.

See the Advisory Committee Notes under Rule 54 of the 2006 edition at page 203 where it reads in part:

### ADVISORY COMMITTEE NOTES

### 1944 Adoption

**Note to Subdivision (a)(1),** The Act of June 28, 1940 (54 Stat 688);

The phrase "district court of the United States" was held not to include district courts in the territories and insular possessions, Mookini v. United States, 303 U.S. 201, 58 S.Ct. 543, 82 L.Ed. 748, conformed to 95 F.2d 960.

The Judicial Code defines the term "district court" to mean specifically **Article III** Constitutional District Courts of the United States.

Title 28 USCS § 451 under DEFINITIONS reads in part:

"The terms 'district court' and 'district court of the United States' means courts constituted by  CHAPTER 5 of this title [28 USCS §§ 81 et. seq.]"

However, the island of Guam, nor "The District Court  of Guam", is amongst those Article III courts constituted by CHAPTER 5 of 28 USCS which is comprised of STATES embracing such courts of Article III standing. See Territory of Guam v. Olsen, 52 L.Ed 2d 250 (1977).

The  lower court in United States v. Seagraves, 100 F.Supp. at 425 (D.C. Guam 1951) held that the district court of Guam is a "territorial court" created  by  virtue of the sovereign congressional faculty , granted under **Article IV, Sec. 3**, of the Constitution, rather than a "true" United States court established under **Article III** of the Constitution to administer the Judicial power of the United States.

In _Mookini v. United States_, 303 U.S. 201, the Supreme Court
stated that "territorial courts are not courts in which the Judicial
Power conferred by the Constitution on the general goverment can
be deposited, and they are incapable of receiving it. Territorial
courts are not invested with any part of the Judicial power defined
in Article III (ie. Federal Courts, Judges, and Jurisdiction).

The Judicial Code is inapplicable to territorial courts created
by Congress, _Callwood v. Callwood_, 127 F.Supp. 179 (3rd. Cir. 1954).
Territorial courts are not Organized under the Constitution, meaning
that they are not Constitutional courts, rather they are creatures
of Congressional enactment and can be properly termed 'legislative
courts', _Mookini v. United States_, 303 U.S. 201; _Benner v. Porter_,
50 U.S. 235; _O'Donoghue v. United States_, 289 U.S. 516.

The Circuit Court in _Wells v. United States_, 214 F.2d 380-383
(5th Cir. 1954) held that the term "district court" means only those
courts which are created under **Art. III** of the United States Constitution.

Territorial courts are not established under the provision of
the federal constitution relating to the Judicial system [Art. III],
nor are they organized by Congress under the Constitution [50 U.S.
235], and Congress cannot extend the jurisdiction of a district
court beyond the bounds of **Art. III**, see _Steckle v. Lurie_, 185 F.2d
921 (6th Cir. 1950) where the court held that "territorial courts"
do not enjoy the benefits of **Art. III** status. Courts of territory
are not strictly speaking courts of the United States, _United States
v. McMillan_, 165 U.S. 504, 41 LE 805, 17 S.Ct. 740 (1897).

The Act of Congress creating **Art. III** United States District
Courts(USDC) do not vest **Art. IV** territorial courts with any criminal
jurisdiction as is conferred by congressional enactment under the
Constitution.

(9)

See _Hubbard v. Ammerman_, 465 F.2d 1169 (5th Cir. 1972) where

the court stated at 1176:

"that United States District Courts have only such jurisdiction
as is conferred by an act of Congress under Art. III, §. 2 of the
Constitution."

In _Mailloux v. Mailloux_, 554 F.2d 976 (9th Cir. 1977) at 979

where the Circuit court held:

"The district court of Guam under this scheme is a legislative
court created pursuant to the Constitutional power of Congress over
territories, **Art. IV, §. 3, cl. 2** and not a Constitutional court
created by way of the Judicial power in **Art. III, §. 1.**

At 982 in _Mailloux_, it goes on further to say that:

"it has been established that the legislative power of the territorial
legislature is the legislative power of the territory, not that
of the United States. . .It's laws, unless set aside by Congress
or the courts, are the laws of the territory, they are not the laws
of th United States."

Nothing in 18 USCS § 3231 DISTRICT COURTS, or 18 USCS § 921

et. seq. of the federal firearm statute suggest granting, conferring,

or extending jurisdiction that of a District Court of the United

States upon **unincorporated** "territorial courts" in insular areas

such as Guam, to be very specific. Neither does its designation,

The "District Court" of Guam, automatically confer the jurisdiction

that of a District Court of the United States (Art. III), just because

it bears the "label" of one. The district court of Guam is not a

"District Court of the United States" (USDC), rather it is a "territorial

court" to be precise.

Title 18 USCS § 3231 refers only to **Article III** Constitutional

District Courts of the United States that are constituted in Title

28 USCS CHAPTER 5., §§ 81 et. seq., and not **Article IV** insular territorial

courts." Guam is not a State, but an island territory of the United

States.

Again, the district court of Guam is not a "District Court of the United States", nor is it a "United States District Court", both of **Art.III** creation and constituted in 28 USCS §§ 81 et. seq., but is a "territorial court" created pursuant to the Congressional power of Congress under **Art. IV, §. 3, cl. 2.**

For these reasons and law cited herein alone, then the district court of Guam could not, and cannot have the jurisdiction that of a "District Court of the United States" as stated in title 48 USCA §1424 (b), where it reads in part:

"The district court of Guam shall have the jurisdiction of a district <u>court of the United States</u>."

The phrase "court of the United States" means courts created by Congress under **Art. III** of the Constitution and not "territorial courts", <u>International Longshoreman's & Warehouseman's Union v. Wirtz</u>, 170 F.2d 183 (1948). As used in 18 USCS & 28 USCS, the term "District Court" means only those courts which are created under **Art. III** of the Constitution and constituted by 28 USCS §§ 81 et. seq., <u>Wells v. United States</u>, 214 F.2d 380; <u>Adams Express Co. v. Denver & R:G:RRy. Co.</u>, 16 F. 712, 715 (1883); <u>Maxwell v. Federal Gold & Copper Co.</u>, 155 F. 110 (8th Cir. 1907); <u>Starklof v. United States</u>, 20 F. 32 (9th Cir. 1927); <u>United States v. Wright</u>, 15 F.R.D. 184 (1954). The court in <u>Mailloux</u> 1554 F.2d held also <u>at</u> 984 that Judicial legislation has no authority beyond the territorial limits of Guam. Which leaves one to wonder, why then does it bring Actions in the name of "United States vs. "? if it's only a territorial court of limited jurisdiction?

See <u>United States v. Lee</u>, 159 F.Supp 2d. (2001) at 1241 where the District Court of Hawai'i held that Federal Judicial "districts" are statutorily defined in 28 USCS §§ 81±144 (listing all judicial "Districts").

In Harlow v. United States, 301 F.2d 361-370 (5th Cir. 1962),
the court held that: a United States territory is not a 'District'
under 18 USCS § 3238 "unless the court having jurisdiction over
the territory is invested with the same (**Art. III**) power as ordinary
District Courts." 28 USCS CHAPTER 5, §§ 81-144.

As in United States v. Lee, 159 F.Supp (D.C. Hawai'i 2001) at
1244, in comparison to Western Samoa, the island of Guam is "Unincorporated
territory" of the United States as well. And like Western Samoa,
it to is not Constituted under CHAPTER 5. of 28 USCS to be statutorily
termed and defined to be a "true" Judicial 'District'.

The territorial goverment of Guam can only act within the limits
of The Organic Act of Guam, USCA Const. **Art. IV, §. 3**; Organic Act
of Guam, §§ 1 et. seq., 22 as amended 48 USCA § 1421 et. seq. 1424.",
Agana Bay Develop. Co., Ltd., v. Supreme Court of Guam, 529 F.2d
953 (9th Cir. 1976).

"Territorial Courts" is not one of those courts mentioned in
Article III, §. 1 of the Constitution, McAllister v. United States,
141 U.S. 174, 35 L.Ed 693, 11 S.Ct. 949 (1891); Downes v. Bidwell,
182 U.S. 244, 45 L.Ed 1088, 21 S.Ct 770 (1901).

Because the Ninth Circuit court of appeals held in Agana Bay
Devv Co., at 529 F.2d 953 that the "Territorial Government act only
within the limits of The Organic Act", yet the district court of
Guam exceeded its authority by applying the Commerce Clause im Criminal
Case No. # CR:95-00054 and indirectly in Civil Case No. # 99=00012,
a provision  that has not been extended to Guam in its Organic Act,
48 USCA § 1421b. (u).

The Congressional Commerce Clause Provision of the United States Constitution was never authorized by Congress to be exercised in the district court of Guam for the unincorporated territory of Guam. Therefore the federal firearm statute, and the basis for its jurisdiction **(Art. 1, S. 8, cl.3)** and its application in its Criminal Code 18 USCS § 921 et. seq. is inapplicable for lack of subject-matter jurisdiction and lack of the commerce clause, a 'provision' that cannot be applied to alleged firearm offenses that are wholly "local" in a territorial court that has been designated a "district court", and should have been transferred back to the 'Original jurisdiction' of Guam Superior Court in Case No. # CF 0006-95.

Because of this unauthorized application of the Commerce Clause Art. 1, S. 8, Cl. 3 in this matter, this petitioner moves this court for releif from a **void judgement** for lack of subject matter jurisdiction.


## c). Subject-matter Jurisdiction Cannot Be Waived

In general, the district court of Guam did not have subject-matter jurisdiction to adjudicate the alleged federal firearm offenses in both criminal and civil proceedings in this matter. For that reason the Civil Judgement here in Civil No. # 99-00012 is void.

Due to the lack of jurisidiction and the void judgements derived and entered therefrom, this court has a constitutional and statutory mandated duty to enter a judgement and order discharging this petitioner of said void judgements pursuant to Title 28 USCS 60 (b) (4), and Guam's Bill of rights, Titlt 48 § 1421b., and (u) of that subsection.

The above rules of law has vested this court with authority to assume jurisdiction to review and set aside a void judgement pursuant to 28 USCS Rule 60 (b) (4).

(13)

The court held in Eldrige v. Richfield, 247 F.Supp 407 (D.C. 1965), that when subject matter jurisdiction on an action is lacking, it cannot be conferred or supplied by consent of both parties or by estoppel, laches, or by waiver of either party. And it is to be noted that petitioner can challenge jurisdiction at any time of the procedings, Glidden v. Zdanok, 370 U.S. 530, 8 L.Ed 2d 671, 82 S.Ct. 1459 (1962), and may be asserted at any time, and will be considered on appeal regardless of whether the issue was raised at trial court, U.S. v. Nukida, 8 F.3d 665 (9th Cir. 1993); see also United States v. Cotton, 535 U.S. 625, 152 L.Ed 2d 860, 122 S.Ct. 1781 (2002).

Defects in subject matter jurisdiction require correction regardless of whether the error was raised in trial court, United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002). Futhermore, since jurisdiction error implicates the courts power to adjudicate the matter before it, such error can never be waived by parties to litigation. The procedural default doctrine does not apply in this petition.

d). Article IV Territorial Judges Cannot Administer Article III District Court of The United States Judicial Functions In Article IV Territorial Courts in unincorporated Island Territories.

The court held in United States v. Saunders, 641 F.2d 660, 663 (9th Cir, 1980) in part:

"While Congress may establish !legislative courts' whose judges do not enjoy Article III guarantees, "inherently judicial task" must be performed by Artticle III Judges." See e.g., Glidden Co. v. Zdanok, 370 U.S. 530, 8 L.Ed 2d 671, 82 S.Ct. 1459, 1472 (1962); Exparte Bakedite Corp., 279 U.S. 438, 73 L.Ed 789, 49 S.Ct. 411, 458, (1929).

In Nguyen v. United States, 539 U.S. 69, 156 L.Ed 2d 64, 123 S.Ct. 2130 (2003) the Supreme Court held that non-Article III judges (Art. 1 & Art. IV), do not have the authority to decide upon defendants initial appeal derived from district court of Guam proceedings.

(14)

The judicial power of the United States may be exercised only by Article III judges. See <u>United States v. Wooley</u>, 726 F.2d 1328 (9th Cir 1983).

Because of the laws and the facts stated herein, the judge was without authority to decide upon petitioner's proceedings and was precluded from entering an unlawful judgement.

## e). Penalties

Petitioner was charged in count V of the superseding indictment with "unlawful carrying of a firearm equipped with a silencer during a drug trafficking", Title 18 UCSC § 924(c), and was sentenced to 30 years for this alleged offense alone.

Title 18 USCS § 924 (c) is a penalty statute. And strictly speaking, a penal statute is one which imposes punishment for an offense committed against the State, <u>Huntington v. Attrill</u>, 146 U.S. 657, 36 L.Ed 1123, 13 S.Ct. 224 (1892).

However, in <u>The Corp. of New Orleans v. winter</u>, 14 U.S. 91, 4 L.Ed 44, wheat 91 (1816), the United States Supreme court held that "<u>territory</u> is not a 'State' within the meaning of that term as used in Article III, §. 2, cl. 1" . See also , <u>Downes v. Bidwell</u>, 182 U.S. 244, 45 L.Ed 1088, 21 S.Ct. 770 (1901).

The term "penal statute" is extended to include <u>any</u> act which imposes a penalty, <u>Peterson v. Ball</u>, 74 A.L.R 187 (1931). Generally, penal statutes are not recognized or enforced in jurisdictions other than those in which they are enacted, <u>James-Dickinson Farm Mortgage Co. v. Harry</u>, 273 U.S. 119, 71 L.Ed 569, 47 S.Ct. 308 (1927).

As described in 48 USCA § 1469a., unincorporated Guam is declared to be an "Insular Area" by congressional policy. Without more.

Case 1:07-cv-00032    Document 1    Filed 11/16/2007    Page 21 of 43

The island of Guam is not a State to enforce "statutory penalties" pursuant to 18 USCS, or such legislation that has not been enacted within its jurisdiction due to this inconsistency, and due to the lack of the commerce clause, Art. 1, §. 8, cl. 3.

In United States v. Bell, 90 F.3d 318 (8th Cir 1996) the Circuit Court held in part at page 320:

"Section 924(c)(1), unlike § 922(q), is tied to interstate commerce. Section 924(c)(1) is not a free-standing statute; it imposes an additional penalty for using or carrying a firearm during or in relation to the violation of other federal statutes for which there plainly is a nexus to interstate commerce."

Yet, due to the lack of the commerce clause in count V in this matter, because the commerce clause has not been extended to Guam, and because Guam does not possess "extraterritorial jurisdiction" to enforce statutory penalties in relation to 'States'. With the facts and the law just stated, it is obvious that there could not plainly be any "nexus" tied to interstate commerce to enforce this count. Title 18 USCS § 924(c) is dependant on both relation to State and the commerce clause Article 1, §. 8, clause 3 of the United States constitution that permits both its use and federal involvement. So it to is inapplicable for lack of subject matter jurisdiction. See Sakamoto 764 F.2d (9th Cir 1985) at 1285.

In McCulloch, Supra, at 19, 9 L.Ed 2d 547, 83 S.Ct. 671 (1963) the Supreme Court stated in part:

"Despite the broad jurisdictional language, if an Act or Statute contains no words which definitely disclose an intention to give it extraterritorial effect, then it is without jurisdiction." As any specific language reflecting Congressional intent.

See also, U.S. v. National Dairy Products, 372 U.S. 29. 9 L.Ed 2d 561, 83 S.Ct. 594 (1963).

Due to the lack of jurisdiction of count (v) in Civil No. # 99-00012, count is therefore uninforcible in petitioner's judgement.

**f). The Alleged Federal Firearm Offenses In CR:95-00054-01 And In CV:99-00012 Were Purely 'Local' And Should Have Been Remanded Back To The Superior Court of Guam, A Court of Competent Jurisdiction In The Original Proceedings in Superior Court No. # CF 0006-95.**

In Sakamoto v. Duty Free , 764 F.2d (1985) at 1285, the Circuit courtheld in part:

"Limitations which the commerce clause places upon power of State governments to burden commerce do not apply to the government of Guam, because Guam is not a "State". U.S.C.S. Const. Art. 1, §. 8, cl. 3.

With that in mind, and being part of Guam's governmental structure, the district court of Guam cannot validly exercise congressional commerce power under Title 18 USCS § 921 et. seq. of the Federal Firearm statute, U.S.C.S. Const. Art. 1, §. 8, cl. 3; and Commerce jurisdiction under Title 28 USCS § 1331, where legislation such as Title 18 USCS §§ 921-930 is dependent on such jurisdiction for a court of competent jurisdiction to hear, review, and decide on such matters. The district court of Guam is without such authority to enter judgement in Civil No. # 99-00012, absent this Congressional Commerce Clause requirement of jurisdiction.

See Mailloux v. Mailloux, 554 F.2d 976 (1977) where the Ninth Circuit stated at 981:

"Except where an act of United States Congress specifically vest jurisdiction of a cause in the District Court of Guam, every reference to law, rule or regulation to the original jurisdiction of the District Court of Guam, concerning a matter arising under the laws of Guam, shall be read and mean the Superior Court of Guam."

The Supreme Court held in Territory of Guam v. Olsen, 431 U.S. 195, 52 L.Ed 2d 250, 97 S.Ct. 1774 (1977) at 431 US 201:

"Important Federal issues can be presented in cases which do not fall within the district courts federal question jurisdiction, because they do not "arise under" Federal law, but instead fall under the exclusive jurisdiction vested in the Superior and Supreme Courts by the Reorganization Act."

Absent the provision, Art. 1, §. 8, cl.3 of the United States Constitution in the Firearm statute 18 USCS § 921 et. seq. as applied in the district court of Guam, then the cause in Criminal Case No.# CR:95-00054-01 and in Civil Case No.# 99-00012 did not, and does not, fall under the laws of the United States, its Constitution, or its treaties. Congress did not extend commerce jurisdiction to Guam. And in the absence of such federal jurisdiction, then the alleged firearm offenses were purely matters of Guam territorial law in violation of Guam's Firearm Code, Chapter 60; 10 GCA, HEALTH and Safety CH. § 60102, and should have been dismissed in the district court of Guam for lack of jurisdiction to try this matter, and where the Original proceedings in Case No.# CF 0006-95 was already disposed of in the Superior Court of Guam. The absence of the commerce provision in relationship to Title 18 USCS § 921 et. seq. of the federal firearm statute as to its application in the district court of Guam is a clear 'statutory infirmity' that violates the bill of rights in Guam's Organic Act, 48 USCA § 1421b. (u).

These alleged offenses were local matters, and if anything at all, petitioner would have served a term of 4 years in Guam territorial prison as a first time felon as an adult under 10 GCA Health and Safety Ch. § 60102 for both machine-gun and silencer, as Guam has its own local firearm laws for such violations, CHAPTER 60 § 60102.

The district court of Guam can only operate within its sphere of authority, the commerce clause not one of them. The Ninth Circuit held in Agana Bay Dev. Co v. Supreme Court of Guam, 529 F.2d at 954 in part:

"the territorial government of Guam can act only to the limits of the Organic Act, just as national government must observe the limits of the Constitution." Bordenelli v. United States, 233 F.2d 120, (9th Cir 1956).

g). The Lack of Commerce Clause And Relationship To A State

Guam is unincorporated territory of the United States, Title
48 USCA § 1421a., contrary to that either the Northern Marianas,
Title 48 USCA § 1801; or Puerto Rico, Title 48 USCA § 731, the latter
two have incorporated status. Guam has been under the protection
of the United States for almost a century, with the exception of
1941-1944 when held by the Japanese during world war II.

The Northern Marianas during that time were a Trust territory
under the League of Nations. In 1947 the United States altered Guam
into a Trust territory under the protection of the United States.

In 1952, the Japanese who until that time disputed the ownership
of the islands renounced all claims of sovereignty. In 1978, The
People of Northern Marianas opted to become a Commonwealth, Pub.L.
94-241, § 1, Mar.24, 1976, 90 Stat. 263., politically unifying themselves
with the United States. However, Guam did not. In 1990, the United
Nations closed out the Northern Marianas' trusteeship, ending the
trust process.

Incorporated territories are those to which the Constitution
has been extended fully by Congress. Unincorporated territories
are not entitled to Constitutional guarantees in the absence of
affirmitive Congressional action, Mailloux v. Mailloux, 554 F.2d
976 (9th Cir. 1977). By choosing "Incorporated Commonwealth" status,
the Northern Marianas stand in direct contrast to Guam who remains
unincorporated, not a Commonwealth, and an entirely different "body
politic" as normally comprehended. Guam is not like a "Trust territory"
which chose to to be a Commonwealth or, "Free Association" administered
by the United States under a covenant of Incorporated Trusteeship.

Because Guam has no right to true self government, it is subject to the "plenary power of Congress with no inherent right to govern itself." The "authority of the Guam government depends entirely upon the will of Congress, and is at all times subject to such alteration as Congress may see fit to adopt." Barusch v. Calvo, 685 F.2d 1199, 1202 (9th Cir. 1982).

As a result, Congress has made no provisions on behalf of Guam's Executive, Legislative, or its Judicial department to apply the Commerce Clause, or extend the Commerce provision in any manner that would permit its application. There can be no assumption that such powers extend any further than presently delineated.

In Title 48 USCA § 1421b. at page 281 under **Commerce power** it states in part that "The commerce clause, **Art. 1, §. 8, cl. 3** of the United States Constitution, has not been extended to Guam.

By incorporation and assumption of the role of Commonwealth, the Northern Marianas completely adopted all laws, statutes, and Constitution of the United States – which the "unincorporated" island of Guam did not.

See **THE ORGANIC ACT of GUAM AND RELATED FEDERAL LAWS AFFECTING THE GOVERNMENTAL STRUCTURE OF GUAM, 2002–GOVERNMENT OF GUAM** – where it states in **SubChap 1–GENERAL PROVISIONS–p.8:**

"Because Guam is an unincorporated territory having only powers given it by Congress "it is in essence an instrumentality of the federal government." As such, the **negative implications** of the Commerce Clause of the United States Constitution do not apply to Guam. **Sakamoto v. Duty Free Shoppers, Ltd.**, D.C. Guam 1983, 613 F.Supp. 381, aff'd. 764 F.2d 1285, cert. den. 106 S.Ct. 1457, 89 L.Ed 2d 715.

Clearly, Guam is unincorporated territory enjoying only such powers as may be delegated to it by Congress in The Organic Act of Guam. Title 48 USCA §§ 1421–1424.

There is no "Commerce Clause" applicable to Guam. "The limitations which the Commerce Clause places upon the power of state governments to burden commerce does not apply to the Goverment of Guam, because Guam is not a State.    .....The historical role of the commerce clause has been confined to limiting regulatory and taxing action by states which may interfere with federal sovereignty." Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285, 1286 (9th Cir. 1985).

If Congress has never Designated the Commerce Clause to Guam expressly, and Guam was never incorporated to encompass all of the laws, statutes, and Constitution of the federal government; and, has not chosen Commonwealth status - then  the apparent piecmeal adoption provided by Congress does not automatically include either the Commerce Clause, interstate commerce, or those laws deriving or originating from the Congressional Commerce Clause Provision; or any implied application of the Commerce Clause such as that stipulated in the federal firearms statute, Title 18 USCS §§ 921-930, to find or constitute the basis of criminal jurisdiction.

"Scholarly commentary agrees that States' regulation of interstate commerce does not extend to "unincorporated territories." Sakamoto at 1287.

In United States v. Bordallo, 857 F.2d 519 (9th Cir. 1988) states that "Guam is not a 'State' for the purpose of bribery statute applicable to agents of state agency." For example, Title 18 USCS § 666 (b) reads as: "Whoever, being an agent of an organization, or of a state or local government..." provides a limitation on  the application. 18 USCS § 922 of the federal firearm statute provides a limitation as well, and is subject to those same retrictions, as is 18 USCS § 924 (c), for it derives its powers from 18 USCS § 922.

Case 1:07-cv-00032    Document 1    Filed 11/16/2007    Page 27 of 43

Title 18 USCS § 922(a)(2)(C) Provides:

(C) nothing in this paragraph shall be construed as applying
in any manner in the District of Columbia, the Commonwealth
of Puerto Rico, or any possession of the United States differently
than it would apply it the district of Columbia, the Commonwealth
of Puerto Rico, or the possession were in fact a State of
the United States.

But, remember, Sakamoto states that '. . . Constitutional restriction

on the States' regulation of interstate commerce  do not extend

to unincorporated territories." at [1287]. Thus, Guam does not have

the same standing as 'incorporated' Commonwealth Puerto Rico, Washington

D.C., or even the Northern, "incorporated" Commonwealth Marianas.

The Circuit law so dictates.

18 USCS § 921 under Definitions (a)(2) provides:

(2) The term "interstate or foreign commerce" includes commerce
between any place outside of that State, or within any possession
of the United States (not including the Canal Zone) or the
District of Columbia, but such term does not include commerce
between places within the state but through any place outside
that State. The term "State" includes the District of Columbia,
the Commonwealth of Puerto Rico, and the possessions of the
United States (not including the Canal Zone).

Between the two definitions, 18 USCS § 922(a)(C), and 18 USCS

§ 921(a)(2), neither one of them make any specific reference to

"unincorporated territory" as Guam is declared to be in Title 48

USCA § 1421a. or "Insular Areas" as Guam is referred to be by Congressional

declaration of policy respecting "Insular Areas" in Title 48 USCA

§ 1469a. See Title 48 USCA "Territories an Possessions".

Title 18 USCS § 922 is dependent on three things in this matter,

"interSTATE commerce" and commerces' relation among "STATES" and

dependent upon  the relationship of one State to another. Or, the

relationship of a State to  a Foreign country, or vice versa. And

thirdly, the validity of the Commerce Clause, Art. 1, §. 8, cl. 3

to permit its use, and  or application.

(22)

The unincorporated island of Guam certainly is neither a "STATE" or a "Foreign Country" to permit the use of the Congressional Constitution Provision **Art. 1, §. 8, cl. 3**. Furthermore, Guam's inhabitants do not possess any voting rights as a citizen of the United States, yet they do possess U.S. citizenship.

The Commerce Clause Art. 1, §. 8, Cl. 3 of the United States Constitution <u>itself</u> permits a trial for violating the provision of interSTATE Commerce - a charge vital and legally essential for all firearm prosecutions under Title 18 USCS § 921 et. seq. of the Federal Firearm Statute. It is lacking here.

18 USCS § 922 cannot be brought, nor can they be sustained in the initial habeas motion in CV. No. # <u>99-00012</u> for they entail **interSTATE Commerce** deriving from the crossing of STATE lines to permit federal involvement, or, entering or leaving foreign countries. That also from the above mentioned - is invalid and inapplicable in this matter as well. Guam is neither Foreign, nor a STATE.

18 USCS § 924 under <u>**Penalties**</u> is dependent on both interSTATE and Foreign Commerce under the Constitutional provision **Art. 1, §. 8, cl. 3** of the United States Constitution. Also, under this statute, this Constitutional Provision <u>must</u> both be **valid** and <u>extended</u> by by the Congress to permit its application in criminal proceedings, and to hold this petitioner accountable, as in <u>United States v. Bell</u>, 90 F.3d 318. So, the Commerce Provision (Art. 1, §. 8, Cl. 3) to is also invaid and inapplicable in count-V (five) of this matter. Therefore this petitioner moves this court for relief from a void judgement in Civil No. # 99-00012 for lack of subject matter jurisdiction.

## V. Grounds For Relief, And Relief Granted

There is a defect in the integrity of the judgement for defendent's intial motion under 28 USCS § 2255 in Civil No. # 99-00012 because the § 2255 Court failed its duty to sua sponte determine if the trial court below lacked subject matter jurisdiction over alleged federal firearm offenses that were based on the Commerce Clause Provision Art. 1, §. 8, cl. 3 of the United States Constitution.

The habeas court should have determined first if the trial court in CR:95-00054-01 had jurisdiction under Art. 1, §. 8, cl. 3, and under Title 28 USCS § 1331 under **Commerce,** where such jurisdiction is necessary for the § 2255 Court to hear, review, and decide matters in Civil No. # 99-00012.

In Verlin v. Central Bank of Nigeria, 461 U.S. 480, 76 L.Ed 2d 81, 103 S.Ct. 1962 (1983) the United States Supreme Court stated that "A federal action must not only satisfy Article III but must also supported by a statutory grant of subject matter jurisdiction."

Subsection 1331 [28 USCS § 1331], is the statute that grants general federal question jurisdiction over any case that "arises under" the laws of the United States. Jurisdiction That has not been conferred upon the district court of Guam, see Title 48 USCS § 1424 **(b)** under **Jurisdiction.**

Jurisdiction under Art. 1, §. 8, cl. 3 of the Commerce Clause, and jurisdiction under 28 USCS § 1331 has not been extended to the government of Guam in it Organic Act, 48 USCA §§ 1421-1424 to exercise **Article III** District Court of the United States matters (jurisdiction) in a Article IV territorial court, to adjudicate Article III firearm offenses in Civil Action No. # 99-00012, that were born out of criminal proceedings in Criminal Case No. # CR:95-00054-01.

(24)

The United States Supreme Court held in <u>United States v. Cotton</u>, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed 2d 860 (2002) that:

"Defects in subject matter jurisdiction can never be forfeited waived, and **require correction**, regardless of whether error was raised in the district court."

In Civil No.# 99-00012, the § 2255 court never looked into construction of the firearm statute, a statute that was raised the throughout petitioner's initial § 2255 motion to <u>sua sponte</u> that the federal firearm statute is not a "free-standing" statute, but that it requires the provision, Art. 1, §. 8, cl.3 jurisdiction under the commerce clause of the United States to support it. Jurisdiction in which The Organic Act of Guam did not adopt, nor has been extended to Guam.

In viewing The Organic Act of Guam, Title 48 USCS § 1421b.(u), its is obvious on its face that the commerce clause has not been extended to Guam within those provisions. And it is also apparent that such jurisdiction (Art. 1, §. 8, cl. 3) is essential in all federal firearms prosecutions.

When subject matter or personal jurisdiction is contested under Fed.R.CVl.Pr. Rule 60(b)(4) on assertion that judgement is void, the burden of proof is properly placed on the party asserting that it has jurisdiction and that jurisdiction existed.

This Court has a Constitutional and statutorily mandated duty pursuant to Civil Procedure Rule 60 (b) (4) to reopen petitioner's <u>defective</u> initial § 2255 in Civil No. # <u>99-00012,</u> to reach the jurisdiction of the offenses in the judgement that the §.2255 Court failed to address in Civil No. # <u>99-00012</u>, and to take notice whether the trial court lacked subject matter jurisdiction to adjudicate federal firearm offenses that are based on Art. 1, §. 8. Cl. 3 of the United States Constitution.

(25)

**VI.**          Conclusion

Pursuant to Federal Rules of Civil Procedure Rule 60 (b)(4) petitioner asks that this court reopen his initial § 2255 in Civil No. # <u>99-00012</u> in order for the court to reach and address the merits of the jurisdiction for the firearm offenses that appeared in petitioner's judgement, and the jurisdiction of those very same firearm offenses that were raised in petitioner's initial § 2255 by taking notice of the aforementioned raised herein that the court lacked subject matter jurisdiction to adjudicate the firearm offenses that were based on the Commerce Clause Provision Article 1, Subsection 8, Clause 3 of the United States Constitution which authorizes prosecutions for those offenses, was not adopted by the laws and constitution of Guam in its Organic Act, Title 48 USCA § 1421b. (u), et. seq.

Date: <u>November, 9th</u>, 2007.     Respectfully Submitted

(Prepared by) Signature

Honofre J.O. Chargualaf
Reg. No. # 01107-093
U.S.P Pollock
P.O. BOX 2099
Pollock, Louisiana. 71467

(26)

# CERTIFICATE OF SERVICE

I, _Honofre Charguala_ hereby certify that I have served a true and **correct** copy of the following:

> (2) Two full motions per Rule 60(b)(4).
> 1-original, and One copy. And the forward
> and reverse page of a third copy for
> Return file copy verification.

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, _Houston v. Lack,_ 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

and deposited in the United Postal Mail at united States Penitentiary Pollock, LA. on this _9th_ day of _November_ , 2007.

Honofre Charguala

#01107-093

P.O. BOX 2099
POLLOCK, LA. 71467

AO 243 (Rev. 5/85)   MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

# United States District Court

| | |
|---|---|
| | District OF GUAM |
| Name of Movant HONOFRE JAMES OLIVA CHARGUALAF | Prisoner No. 01107-093 · Case No. 95-00054 |
| Place of Confinement UNITED STATES PRISON - FLORENCE, COLORADO | |

UNITED STATES OF AMERICA    V.   HONOFRE JAMES OLIVA CHARGUALAF
(name under which convicted)

## MOTION

**FILED**

**DISTRICT COURT OF GUAM**

1. Name and location of court which entered the judgment of conviction under attack ____

   UNITED STATES DISTRICT COURT, TERRITORY OF GUAM

   **JAN 2 5**

2. Date of judgment of conviction ___ NOVEMBER 20, 1995

   **MARY L. M. MORAN**
   **CLERK OF COURT**

3. Length of sentence ___ 44 YEARS

4. Nature of offense involved (all counts) __ 18 USC §922(a)(4); 18 USC §922(o)(1); 18 USC
   §922(g)(3) and 21 USC § 841(a)(1); 18 USC §924(c)(1).

   ____

   ____

   ____

5. What was your plea? (Check one)
   (a) Not guilty        ☒
   (b) Guilty            ☐
   (c) Nolo contendere   ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

   ____

   ____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury              ☒
   (b) Judge only        ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

(2)

## STATEMENT OF THE CASE

On April 19, 1995, the Federal Grand jury charged Chargualaf with: unlawful transportation of a machinegun (18 USC § 922. (a)(4); unlawful possession of a machinegun (18 USC § 922 (o)(1); unlawful possession of a firearm by a fugitive from justice (2 counts), (incorrectly cited as 18 USC § 922 (g)(3); instead of 18 USC § 922 (g)(2); possession with intent to distribute methamphetamine (3 counts)(21 USC § 841 (a)(1); unlawful carrying of a firearm equipped with a silencer during a drug trafficking crime (18 USC § 924 (c); and unlawful carrying of a firearm during a drug trafficking crime 918 USC § 924 (c). Six months later, on October 20, 30, and 31, 1995, the U.S. District Court heard Chargualaf's motion to suppress illegally seized evidence. On October 31st, the court denied his motion to suppress by an order the court file on November 9, 1995. On November 14th through November 16th, a jury tria was held. On November 20th, Chargualaf was convicted on all charges alleged in the indictment. On January 12th, 1996, the court heard Chargualaf's Motion For Acquittal, which was granted in part and denied in part on January 23th, 1996, On May 10th 1996, the court sentenced Chargualaf to forty-four (44) years imprisonment. A judgement of conviction was filed on May 20th and amended on May 22nd.

On May 28th, Chargualaf filed his Notice of Appeal. On May 21st, 1997, the Appellate Court filed an unpublished Memorandum in which it affirmed Chargualaf's conviction.

Chargualaf timely petitioned the Supreme Court of Writ of Certiora on the single issue of the meaning of the "carry" element on 924 (c).

On June 15th, 1998 the Supreme Court denied the petition.

2

ry 11, 1995, the suspected narcotic was taken by Officer

n, property custodian to the Guam Police Department Crime

atory, where it was turned over to Ms. Zenobia Lynn, Criminalist,

scientific analysis. (TR 127). Ms. Lynn did not submit a formal

port into evidence, but merely wrote, ".1412 grams net of ice

Analyst = Zenobia Lynn" across the "Evidence/Property Custody

Receipt." (See Exhibit E). At trial, Lynn testified, "the results

of my analysis is the substance contained in this vial is 95 percent

methamphetamine hydrochloride." (TR 132). When asked if that was

"ice," she answered, "The common street name for crystal

methamphetamine is 'ice,' and this is the powdered form so I just

call it methamphetamine." (TR 133). Lynn also testified that the

total weight of the exhibit was .1412 grams and that she used .0194

gram net in the analysis (TR 134). This testimony conflicts with

the government's own witness William Moriwaki, Forensic Chemist

at the Western Regional Lab of the Drug Enforcement Administration

whose experience is vastly greater than Lynn's (TR 458-461). When

discussing government Exhibit 20 in this case this colloquy followed:

    Q - What was the result of your analysis of ... No. 20?
    A - I found it to contain .2 grams of d-methamphetamine
        hydrochloride.
    Q - Were you able to attach a purity to that exhibit?
    A - Unfortunately, no. Due to the lack of amount here, it
        was deemed not possible ... (TR 477).

The federal government's involvement in this case started just

after Chargualaf's initial arrest in October, 1994. Special Agent

Blake Boteler of the Bureau of Alcohol, Tobacco And Firearms was

asked examine an H & K, model SP-89 to determine if it was a machinegun.

At that time he interviewed both Chargualaf and his brother Roy,

and took their signed affidavits. As can be seen from Chargualaf's

sworn affidavit, his entire prior affidavit made on October 28th

was a lie. (See Exhibit F). According to Boteler's testimony at

7

As to whether or not Chargualaf could be suspected of a user of methamphetamine, not only was a "pipe" found in car, but also there was a photo of him with the pipe to his th (See TR 171, 230, 295). The minute quantity found in Chargualaf's front coin pocket is indicative of that carried by a user and can easily be differentiated from the for sale quantities found in the other drugs seized during the raid on Chargualaf's house in March. As Boteler pointed out, it was his strategy to hang a drug trafficking crime on Chargualaf in order to make a violation of 18 USC § 924(c) viable. Next, utilizing this charge coupled with the inadequately investigated machinegun charges, the U.S. government obtained an indictment on March 29, 1995. Utilizing this indictment, an arrest warrant was issued and a raid pretexturely disguised as an execution of the arrest warrant, was immediately accomplished by a joint task force. This action was totally unneccessary as Chargualaf had always been cooperative, as testified to by all officers, and would have self-surrendered if he had been informed of the indictment as can be seen by his own affidavit (see Exhibit F). At the time of his arrest, Chargualaf was handcuffed and placed in the back of a police car for a long period of time until he was finally badgered into permitting the raiders to search his home, their true purpose in this raid. They could have obtained a search warrant, but elected not to do so.

Approximately eight and one half (8½) months later, Chargualaf was finally brought to trial. His first attorney had attempted to suppress most of the evidence which was eventually used at Chargualaf's trial, but unfortunately he based his motion on the wrong reasons. The attorney then claimed that there existed an irreconcilable conflict between himself and Chargualaf and was

9

failure to investigate clearly prejudiced him to the
of denying him a fair trial.

1) Unlawful Transportation of a "Machinegun"

The government's entire case against Chargualaf on this count was
based on Chargualaf's own statement that he had brought "parts"
of a machinegun to Guam in May, 1994. As can be seen in Chargualaf's
affidavit (Exhibit F), that entire statement was a lie made up
to protect his younger brother, Roy. Chargualaf (like the jury)
did not know that "parts" of a machinegun would qualify as a violation
of this law and he felt that by claiming they came from a Class
III dealer almost five years before, he could not be prosecuted.
In fact, Arriola's investigation would have determined:

   a)  Chargulaf didn't have the financial ability to pay
       $500 for a part and then hide it away for over 4 years
       in the hopes that he or Roy could buy an HK-SP89 to
       which this part could be attached.
   b)  The Customs Department's inspection procedures are of
       such a nature that the smuggling in of these "parts"
       would have been almost impossible. An interview with
       a Customs Officer would have shown that to Arriola and
       given him a good defense witness for the trial.
   c)  Roy gave an affidavit that the machinegun was both
       registered to him and owned by him and had been in
       his possession until he gave it to his brother for
       transportation to his new home on the same day that
       it was found in Chargualaf's car

2) Unlawful Possession of a "Machinegun"

The government's case on this count was based on the gun being
found in Chargualaf's car. Had the car not been "impounded" by
Officer Babauta, the gun would have been given to Roy as soon as
either of the brothers recognized that it had inadvertently been
left in Chargualaf's car. An investigation would have shown:

   a)  The "Classic Impala" had just come into Guam. This
       could have been confirmed with records from the Port
       Authority. It is the law and the policy of the police
       that full faith and credit be given to the laws of
       other states. Consequently, Babauta's statement regarding
       the basis for impounding the vehicle was incorrect. The
       Port Authority had released the car only 3 days prior.

13

Imagine the effect that impounding every vehicle that drove from one state to another would have upon travel. Investigation would have shown that a grace period is both policy and procedure for the police.

b) An interview of Chargualaf's brothers, Roy and James would have shown that Chargualaf did not place the guns under the seat of his car and had no way of knowing that they were there.

3) Unlawful Possession of a Firearm by A Fugitive

An investigation of the codes would have shown that Chargualaf was actually indicted for 18 USC 922(g)(3), Drug User or Addict in Possession of a Firearm. Since it was never established at trial that Chargualaf was a drug user, this charge would have failed.

4) Possession With Intent To Distribute Methamphetamine

The government's case on this count was based on .1412 grams of methamphetamine being found on Chargualaf after his arrest and second pat down at the police station.

a) This illegal search and seizure based on an improper arrest in light of the recent Supreme Court case of Knowles v. Iowa, 97-7597 will be discussed fully in another part of this memorandum. However, at the least, had Arriola investigated the pretextural stop and subsequent arrest and interviewed Babauta, he would have found:

1) Babauta made two, not one investigation of the car. At the second search (re-check), he testified he felt safe, as another police vehicle was on the scene. It was at this "re-check" that the Baretta was found.

2) At that time, Chargualaf was at the rear of the car and could not have reached the gun in the car easily.

3) Babauta knew that the guns found at his search of Chargualaf's car 2+ months earlier belonged to Chargualaf's brother, not to Chargualaf.

4) That because of 1-3, the gun and drugs were not found during a valid "protective weapons search."

5) By Babauta's own statement, Chargualaf's car was legally registered, the only reason to impound the car was because of the Baretta found during the illegal "safety" "re-check". Since no arrest had been made the "re-check" was illegal and the gun found not proper basis for an impound. If no impound was proper, no "impound inventory" could be proper either. Therefore, the subsequent arrest was illegal as was the second pat down which resulted in the discovery of the suspected drugs.

1     that the police had arrested an individual who was in

2     possession of what they believed was a machine gun, and they

3     asked for my assistance to come over and identify it. So at

4     10:00 in the morning I went over to Pedro's Plaza and examined

5     the H & K, model SP-89, 9 millimeter machine gun, serial

6     number 21-16144, and --

7          Q      Why was that machine gun within the federal

8     statutes?

9          A      I field tested the firearm and found that it would

10    function as a machine gun because it would fire more than one

11    round with a single pull of the trigger.

12         Q      How many rounds would it fire?

13         A      As many as were in the magazine.

14         Q      How many did the magazine hold?

15         A      I believe 30.

16         Q      How long would it take that weapon to fire 30

17    rounds?

18         A      Approximately two to two-and-a-half seconds.

19         Q      Did it have a lower receiver with a selector

20    switch?

21         A      Yes, it did. It had a lower receiver, and the

22    selector switch displayed three distinct letters, an "S," an

23    "E," and an "F." If you had the selector switch in the "S"

24    position, I believe that stood for "Safe;" the firearm would

25    not function; you would not be able to fire the firearm.

                                                                      3

1    I moved the selector switch to the "E" selection,
2    and then it functioned as a semi-automatic firearm, meaning it
3    would fire one round, or one bullet each time you pulled the
4    trigger, but no more.

5    When I moved it to the "F" position, it function⸍
6    as a fully automatic weapon or machine gun, because if you
7    would pull the trigger, it would fire as many rounds as long
8    as you held the trigger.

9    The "E," I'm not sure what it stands for, because
10   you have to remember this is an H & K or Heckler and Kopt gun,
11   and they're made in Germany, and so many of their designations
12   are in German, so --

13   Q      Did you attempt to locate and interview the owner
14   of that machine pistol; that would be the brother of the
15   defendant, and that would be Mr. Roy Chargualaf?

16   A      Yes, we did.  As you indicated the firearm was
17   registered to a Roy Chargualaf.  We contacted Roy Chargualaf
18   and interviewed him at his residence there in Sinajana.
19   Excuse me, not Sinajana -- Inarajan.

20   Q      When was that?

21   A      It was about 6:30 in the evening of the 28th.

22   Q      Was Roy Chargualaf cooperative with you, and did
23   he make statements to you?

24   A      Yes, he did.

25   Q      What did Roy tell you about the machine pistol in

4

1          down from North Carolina, and that he was
2          Class III licensed. Since the day it was
3          purchased it was kept at my grandmother's
4          house in San Diego, California, until May
5          of this year when I brought it back as
6          parts. As far as the seller is concerned
7          I don't remember a name. It was a one-
8          time offer for $500."
9    Signed Honofre Chargualaf.
10         Q      In his oral statement did he make admissions that
11   were similar or identical to what he wrote?
12         A      Yes, he did. He'd indicated that he'd brought the
13   select fire receiver back on May 11 or 12.
14         Q      Now Count I of the proposed indictment alleges
15   unlawful transportation of a machine gun. Is it unlawful,
16   federally, to transport portions or part of a machine gun
17   rather than the entire machine gun itself?
18         A      Yes. Under federal law the machine gun is the
19   machine gun, but it also is any parts or combination of parts
20   that are designed to convert a gun to a machine gun. So if
21   you have a number of parts in which their sole design is to
22   make a normal gun into a machine gun, those parts are
23   considered a machine gun.
24         Q      So what was it that Honofre Chargualaf did in this
25   case that would constitute an unlawful transportation in

7

1     question?

2     A     Roy indicated that he and his brother, meaning

3 Honofre, had put their money together and had purchased that

4 firearm as well as eight or nine other firearms. He indicated

5 that the lower receiver with the selector switch portion of

6 the gun his brother Honofre had purchased in California and

7 had brought to Guam, from California, a few months earlier,

8 and he indicated he knew that the select fire -- selector

9 switch -- on that would make the SP-89 act as a machine gun.

10     Q     Did you ask Roy any questions about what had

11 happened earlier, the day before, that led up to the stop, and

12 how it came to be that the gun had been in his brother's

13 possession?

14     A     Yeah. Roy had mentioned that he had been moving,

15 and that in the course of moving some of these guns to a more

16 secure location, that they inadvertently left the guns behind

17 in his brother's car.

18     Q     Did you attempt to locate the defendant himself,

19 Honofre Chargualaf?

20     A     In fact did that same evening. Probably about

21 eight o'clock, Honofre Chargualaf arrived at Roy Chargualaf's

22 residence but he was obviously intoxicated. We chose not to

23 interview him at that time. We asked him to come to our

24 offices at a later date and to call us to set-up a time. He

25 did call and in fact arrived on October 31. At approximately

5