1  hcharg.ans

2  FREDERICK A. BLACK
   United States Attorney
3  JOSEPH F. WILSON
   Assistant U.S. Attorney
4  Suite 502-A, Pacific News Bldg.
   238 Archbishop Flores Street
5  Agana, Guam 96910
   PHONE: (671) 472-7332
6  FAX: (671) 472-7334

F I L E D
DISTRICT COURT OF GUAM

APR 1 9 1999

MARY L.M. MORAN
CLERK OF COURT

7  Attorneys for the United States of America

8

9              IN THE UNITED STATES DISTRICT COURT

10             FOR THE TERRITORY OF GUAM

11

12  UNITED STATES OF AMERICA,        )     CRIMINAL CASE NO. 95-00054
                                     )
13              Plaintiff-Respondent, )
                                     )     **ANSWER TO MOTION TO**
14          vs.                      )     **VACATE, SET ASIDE, OR**
                                     )     **CORRECT SENTENCE**
15  HONOFRE J. O. CHARGUALAF         )
                                     )
16              Defendant-Petitioner. )
                                     )
17  _____ )

18

19        Pursuant to Rule 5 of the Rules Governing Proceedings in the United States District Courts

20  under Title 28, United States Code, Section 2255, the United States of America, Plaintiff-

21  Respondent, hereinafter Government, by the United States Attorney for the District of Guam, files

22  this answer and supporting brief, and respectfully moves this Court to deny Honofre J. O.

23  Chargualaf's, Defendant-Petitioner, hereinafter Petitioner, Motion to Vacate, Set Aside, or Correct

24  Sentence.

25        Petitioner seeks relief first on the basis of the ineffective assistance of trial counsel. Petitioner

26  alleges ineffective assistance of trial counsel resulting from numerous instances of failure to

27  investigate. He characterizes those alleged failures to investigate as:

28        (1) Regarding the charge of unlawful transportation of a machine gun, as charged in

Count I of the Superseding Indictment, an investigation would have "determined":

    a) Petitioner "didn't have the financial ability to pay $500 for a part and then hide it away for aver 4 years in the hopes that he or Roy could buy a HK-SP89 to which this could be attached";

    b) Counsel could have located a "good defense witness" by interviewing a "Customs Officer" who "would have shown" that the "Customs Department's inspection procedures are of such a nature that the smuggling in of these parts would have been almost impossible";

    c) "Roy gave an affidavit that the machine gun was both registered to him and owned by him and had been in his possession until he gave it to his brother for transportation to his new home on the same day that it was found in Chargualaf's car";

(2) Regarding the charge of unlawful possession of a machine gun, as charged in Count II of the Superseding Indictment, an investigation "would have shown":

    a) That Officer "Babauta's statement regarding the basis for impounding the vehicle was incorrect" because his vehicle had just arrived on Guam and "a grace period is both policy and procedure for the police ";

    b) An interview of Petitioner's brothers, James and Roy, "would have shown that Chargualaf did not place the guns under the seat of his car and had no way of knowing that they were there";

(3) Regarding the charge of unlawful possession of a firearm by a fugitive, as charged in Counts III and VI, an "investigation of the codes would have shown" that Petitioner was charged with a violation of 18 U.S.C. § 922(g)(3), "Drug User or Addict in Possession of a Firearm." Since no evidence was adduced at trial that Petitioner was a drug user, Petitioner argues there was a failure of proof for those counts;

(4) Regarding the charge of possession with intent to distribute methamphetamine, as charged in Counts IV, VII and VIII:

    a) An investigation by his counsel would have revealed the stop was "pretextural"

2

that Petitioner should not have been convicted of a violation of 18 U.S.C. § 924(c), because the drugs were "found" on him at the police station rather than the scene of the January 4, 1995 stop. Petitioner reasons "[n]o drugs at the scene of the arrest means no drug trafficking."

Petitioner further alleges appellate counsel was ineffective for failing to raise the issue of the legality of the March 30, 1995, search of his residence due to "the task force" failing to obtain a search warrant "prior to the raid to arrest" him. Petitioner further claims his appellate counsel was ineffective in failing to raise the issue of the arrest warrant being the "fruit of the poisoned tree" because the warrant was based "upon the two prior illegal searches and seizure."

As separate grounds for relief, Petitioner claims he suffered from Prosecutorial misconduct and breach of Judicial Discretion because the trial court: 1) failed to suppress evidence seized during an illegal search and seizure, 2) failed to protect Petitioner against the ineffective assistance of counsel; 3) failed to investigate the jury's inability to speak or understand English; and, 4) failed to insure that the entire court proceedings be transcribed.

I.     Jurisdiction

This Court has jurisdiction over the subject matter and parties pursuant to Title 28, United States Code, Section 2255.

II.    Transcripts

The transcripts of the hearing on Petitioner's motion to suppress, trial, hearing on Petitioner's motion for judgment of acquittal and sentencing hearing are before this Court under the Petitioner's criminal action. In this Response, the government has designated the transcript of the suppression hearing as Suppression Tr.; the transcripts of the trial are designated as Trial Tr., Vol. I, II, or III; the transcript of the hearing on the motion for judgment of acquittal is designated as Acquittal Tr.; and, the transcript of the sentencing hearing is designated as Sentencing Tr.

III.   Nature of the Case, Course of the Proceedings, and Disposition in the Court Below

On April 19, 1995, a Federal Grand Jury in the District of Guam charged Petitioner in a nine count "Superseding Indictment" with unlawful transportation of a machine gun, unlawful possession of a machine gun, two counts of unlawful possession of a firearm by a fugitive from justice, three

6

the result of the proceeding would have been different. United States v. Murray, 751 F.2d 1528, 1535 (9th Cir.), cert. denied, 474 U.S. 979 (1985), "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Additionally, in deciding whether a defendant was incompetently defended, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Petitioner must show that his counsel failed to exercise the skill, judgment, or diligence of a reasonably competent attorney. Weygandt v. Ducharme, 774 F.2d 1491, 1493 (9th Cir.1985).

A.  Failure to Investigate

Petitioner contends he received ineffective assistance of trial counsel because his attorney failed to conduct investigation and interviews.  Ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case because "[w]hen, ... the prosecution has an overwhelming case based on documents and the testimony of disinterested witnesses, there is not too much the best defense attorney can do." Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986), quoting, United States v. Decoster, 624 F.2d 196, 210 (D.C. Cir. 1976) (en banc).

Petitioner alleges his counsel failed "to address material deviations from prior statements" and "didn't even adequately read or review the documents provided to him by the government." (Motion at 12).  These claims are vague and conclusory.  See Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).  The government will attempt to set forth its response to Petitioner's specific claims of ineffective assistance of trial counsel in the order presented by Petitioner.

1).  "Unlawful Transportation of a 'Machinegun'."

Petitioner first asserts ineffectiveness due to counsel's failure to investigate his lack of "financial ability" to have purchased and retained the lower receiver.  This claim is vague and conclusory.  Importantly, Petitioner does not claim he informed his attorney of his lack of financial resources.  Following his arrest, Petitioner admitted to having purchased the lower receiver and subsequently bringing it to Guam.  While an attorney does have the duty to conduct reasonable

14

was faced with a situation in which the "star" witness and "protected" family member, had pled guilty to a felony count of illegally transferring another firearm to his client.

Petitioner's claim that a Customs Officer could have been located to testify that it "would have been almost impossible" for a lower receiver to have been smuggled into Guam is frivolous. "[T]he duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995), quoting, U.S. v. Tucker, 716 F.2d 576, 584 (9th Cir. 1983). In addressing the issue of the duty of an attorney to locate a witness, the Ninth Circuit has stated "[w]here this Court has found a failure to locate potential witnesses to constitute incompetent lawyering, the attorney refused to perform any investigation into leads directly related and of potentially great benefit to the defense." Hendricks v. Calderon, 70 F.3d at 1040, citing, Sanders v. Ratelle, 21 F.3d 1446, 1456-57 (9th Cir. 1994).

The logical extension of Petitioner's argument is that his attorney had a duty to interview Customs Officers until he found one amiable enough to offer an opinion that it is unlikely a lower receiver could have been smuggled onto Guam because of the Customs' check. This type of claim was addressed by the Ninth Circuit when it stated, "[w]hile the Sixth Amendment requires an attorney to look for evidence that corroborates the defense he pursues, the Sixth Amendment has not been expanded to require an attorney to hunt down such marginally relevant and indirectly beneficial evidence. Even assuming the existence of a duty to find evidence that bolsters a key witness' credibility by corroborating irrelevant facts in his testimony, such evidence is so loosely tied to the defense that its absence would not undermine confidence in the outcome." Hendricks v. Calderon, 70 F.3d at 1040-41, citing, Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Petitioner has failed to establish either error or omission by counsel, or resulting prejudice.

2). "Unlawful Possession of a 'Machine gun'."

Petitioner first argues that since his vehicle had only arrived on island three days prior to the night of the first stop, investigation would have revealed "a grace period is both policy and procedure for the police." (Motion at 14). This argument is meritless and contrary to the previous

16

purchased the lower receiver and that he (Roy Chargualaf) was unaware the lower receiver was on the firearm created a strong inference that Petitioner knowingly possessed the machine gun on the night of his arrest. Additionally, Petitioner's own statement that he purchased and brought the lower receiver to Guam, his conduct in locking the door of his vehicle and his statement to Officer Babauta that his brother gave the firearms to him and he kept them in the car all day was evidence of his knowing possession. Consequently, Petitioner has not only failed to show a failure to investigate by his trial counsel, he has not shown any resulting prejudice. The only evidence that Petitioner did not knowingly possess the machine gun is Petitioner's belated self-serving statement.

   3). "Unlawful Possession by a Fugitive."

      Petitioner argues his attorney failed to investigate "the codes" to know he was indicted for a violation of Title 18, U.S.C., § 922(g)(3) on Counts III and VI. That section makes it unlawful for a drug user or addict to possess a firearm. Petitioner reasons there was a lack of proof he was either a drug user or addict. The Superseding Indictment, on Counts III and VI, did recite at the end of the charge, "in violation of Title 18, United States Code, Section 922(g)(3)." However, Petitioner could not have been confused regarding what he was charged with because the body of the charges stated he possessed and received the firearms as alleged when he was "at that time being a fugitive from justice, to wit, in Bench Warrants pending in the District Court, County of El Paso, State of Colorado, Criminal Actions 91CR2019 and 92CR503 for First Degree Trespass and Bond Jumping." Courts generally do not regard the statutory citation as part of the indictment. "A conviction may be sustained on the basis of a statute or regulation other than that cited or even where none is cited at all, as long as it is clear that the defendant was not prejudicially misled." United States v. Lipkis, 770 F.2d 1447, 1452 (9th Cir. 1985).

   On the first day of the trial, November 13, 1995, the government moved to amend the Superseding Indictment. Petitioner's counsel objected, but the district court overruled the objections. (Master Docket Sheet, Entry 60a). Petitioner failed to have the proceedings of November 13, 1995 transcribed. A conversation took place between the attorneys and the district court concerning the corrections of the statutory citation in Counts III and VI from §922(g)(3) to (g)(2). (Trial Tr. 556).

19

1   Petitioner was never misled regarding what he had to defend. The charging terms were never altered
2   only the statutory citation subsection of § 922(g) was changed. If the government had not requested
3   a correction of the indictment, the result would have been a non-prejudicial variance that would not
4   affect the validity of the conviction. See, e.g., United States v. Momeni, 991 F.2d 493, 495 (9th Cir.
5   1993); United States v. Laykin, 886 F.2d 1534, 1544 (9th Cir. 1989); United States v. Von Stoll,
6   726 F.2d 584, 587 (9th Cir. 1984). The fact that the district court granted the government's request
7   and corrected the indictment does not change, nor should it change, the outcome. Thus, the
8   correction was proper. Furthermore, the jury was instructed that Counts III and VI were for
9   violations of 18 USC § 922(g)(2). (Trial Tr. 556, 568-69, 578, 582-84). Petitioner's counsel neither
10  failed to investigate this matter nor did Petitioner suffer any prejudice.

11          4). "Possession With Intent To Distribute Methamphetamine."

12          Petitioner lists a variety of complaints about his attorney's alleged failure to investigate
13  or interview witnesses concerning the stop on January 4, 1995, the evidence seized following that
14  stop, and the testimony of agents concerning the evidence seized or obtained following the stop.
15  Petitioner's reliance on the United States Supreme Court decision of Knowles v. Iowa, 119 S.Ct. 484
16  (1998) is misplaced. Knowles concerned a search incident to citation. Knowles v. Iowa, 119 S.Ct.
17  at 486. Whereas, Petitioner's case was both an inventory and protective search. See, United States
18  v. Chargualaf, 114 F 3d 1196, 1997 WL272225(9th Cir. (Guam) at 2).

19  Petitioner claims his attorney should have interviewed Officer Babauta to determine the stop
20  of January 4, 1995, was an illegal pretextual stop. These conclusory allegations reveal nothing of
21  substance. The attorney did question Officer Babauta when the officer testified during the
    suppression hearing. Officer Babauta testified he conducted a pat down search after removing
    ~titioner from the vehicle and had him stand at the rear of the vehicle while he conducted a search of
        ·erior for weapons. (Suppression Tr. 38-44). Officer Babauta observed Petitioner speeding and
            ʳdisplaying a license tag. Petitioner was unable to produce a valid Guam driver's license or
                ʳration. While talking to Petitioner, Officer Babauta smelled alcohol and observed an
                    ·· partially concealed. After asking Petitioner to get out of the vehicle, another

28

                                        20

conduct a field sobriety test was developed at the suppression hearing. Petitioner fails to explain how this contradicts "the government's and the appellate court's opinion." These are arguments Petitioner lost at the district court and the Ninth Circuit. Merely placing the label "failure to investigate" in front of the arguments does not cast doubt on the correctness of the previous decisions. Petitioner offers no new evidence.

Petitioner's argument that investigation by his attorney "would have shown that Chargualaf could not have been guilty of 924(c)" is also conclusory. The fact that the drugs weren't discovered until he was searched at the police station was revealed at Petitioner's trial. It was for the jury to decide whether the failure to locate the drugs at the first pat down of Petitioner was of any factual significance. As a matter of law, the subsequent discovery did not result in a failure of proof. Petitioner has cited no authority for this proposition. The jury could reasonably determine Petitioner had possession of the methamphetamine at the time of the stop because it was in his possession when he was searched at the police station during his detention. Petitioner's argument that the failure to locate the methamphetamine at the scene before his person was subject to a more intensive search precluded his conviction for violating 18 U.S.C. §924(c) is pure sophistry.

Petitioner's argument that his attorney should have hired an independent chemist to testify that the small amount of methamphetamine could not be tested for purity thus impeaching the testimony of Criminalist Lynn is also conclusory. Furthermore, his claim that one chemist, William Moriwaki, testified it wasn't possible to test the purity of a small amount of methamphetamine hydrochloride is misleading. First, Criminalist Lynn was talking about Government Exhibit #12, (Trial Tr. 129), whereas Forensic Chemist Moriwaki was discussing Government Exhibit #20 (Trial Tr. 477). Secondly, Moriwaki' full statement regarding why the purity test was not done on Exhibit #20 was: "Due to the lack of amount here, it was deemed not possible or not necessary to figure out a purity on the sample." (Trial Tr. 477) (Emphasis added). The issue of whether the amount of methamphetamine found on Petitioner on January 4, 1995, was for personal use or for distribution was placed before the jury. Petitioner speculates what the testimony of an "expert" regarding the small amount of methamphetamine would be. The pipe was introduced into evidence. (Trial Tr.

22

1  Special Agent Anderson testified he was present at the interview in the role of a witness. (Trial Tr.
2  409, 435). Special Agent Anderson's statement that he wasn't present "in January" was a reference
3  to the arrest scene of January 4th, not the interview. (Trial Tr. 410).

4     5). "Unlawful Carrying of a Firearm Equipped with a Firearm Silencer During a Drug
5     Trafficking Crime."

6          Petitioner's claims that the drugs "were not discovered at the scene of the crime", that
7  the drugs "were only for personal use", and that the drugs "were not properly tested for purity" have
8  been previously addressed in this Response. All of these matters were either raised at the suppression
9  hearing or at the trial. That "additional issues" would have been raised upon "proper investigation
10 and interviewing" is conclusory. As previously discussed, Petitioner's reliance on the United States
11 Supreme Court decision in Knowles v. Iowa, is misplaced because that decision is inapposite to the
12 facts of his case. Furthermore, his allegation that Officer Babauta had a "cavalier attitude about
13 impounding cars" is conclusory.

14     6). "All Evidence Seized During the Search Conducted on March 30th."

15          Petitioner's allegations in this section are conclusory and vague. During the hearing
16 on the Motion to Suppress, evidence relating to the arrest and consent to search was developed.
17 Petitioner does not articulate what additional investigation was needed or what such additional
18 investigation would reveal. Issues regarding Petitioner's consent to the search of his residence were
19 previously raised and adversely decided. Petitioner apparently desires another opinion. The adverse
20 decision by the trial court and the Ninth Circuit was not a result of a failure to investigate by his
21 attorney, but of the facts themselves.

22     In this portion of his Motion, Petitioner uses statements like "'permission' to search was
23 coerced", "Chargualaf was painfully handcuffed", and "[c]an a man who is being tortured give
24 consent?" (Motion at 16-17). These statements and others in his motion raise questions regarding
25 the lack of specific information or testimony to support the allegation. In this Response, the
26 government has addressed the issue that Petitioner has failed to allege he informed his attorney of
27 facts which might have resulted in a duty for counsel to conduct investigation of certain matters
28

24

# ORIGINAL

hchargu.ind

FREDERICK A. BLACK
United States Attorney
JOHN N. GLANG
Assistant U.S. Attorney
Suite 502-A, Pacific News Bldg.
238 Archbishop Flores Street
Agana, Guam  96910
PHONE:  472-7332
FAX:  472-7334

F I L E D
DISTRICT COURT OF GUAM
AGANA, GUAM

MAR 29 1995

MARY L. M. MORAN
Clerk Of Court

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. **CR 95-00054** |
| Plaintiff; | INDICTMENT |
| | UNLAWFUL TRANSPORTATION OF A MACHINEGUN [18 U.S.C. § 922(a)(4)] UNLAWFUL POSSESSION OF A MACHINE GUN [18 U.S.C. § 922(o)(1)] UNLAWFUL POSSESSION OF A FIREARM BY A FUGITIVE FROM JUSTICE (2 COUNTS) [18 U.S.C. § 922(g)(3) POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE [21 U.S.C. § 841(a)(1)] UNLAWFUL CARRYING OF A FIREARM EQUIPPED WITH A FIREARM SILENCER DURING A DRUG TRAFFICKING CRIME [18 U.S.C. § 924(c) |
| vs. | |
| HONOFRE JAMES OLIVA CHARGUALAF, DOB:  4-4-69 | |
| Defendant. | |

THE GRAND JURY CHARGES:

## COUNT I - UNLAWFUL TRANSPORTATION OF A MACHINE GUN

On and between May 11, 1994 through May 12, 1994, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and unlawfully transport in interstate and foreign commerce a machine gun (as defined in section 5845 of the Internal Revenue Code of 1954), to wit, a select fire lower receiver of a Model SP-89, 9mm machine-pistol, in violation of Title 18, United States Code, Section 922(a)(4).

## COUNT II - UNLAWFUL POSSESSION OF A MACHINE GUN

On or about October 27, 1994, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and unlawfully possess a machine gun, to wit, a Heckler & Koch, Model SP-89, 9mm machine pistol, Serial# 21-16144, in violation of Title 18, United States Code, Section 922(o)(1).

## COUNT III - UNLAWFUL POSSESSION OF A FIREARM BY A FUGITIVE FROM JUSTICE

On or about October 27, 1994, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and unlawfully possess a firearm in and affecting commerce and did receive a firearm which had been shipped and transported in interstate and foreign commerce, to wit, a Heckler & Koch, Model SP-89, 9mm machine pistol, Serial# 21-16144, said defendant at that time being a fugitive from justice, to wit, in Bench Warrants pending in the District Court, County of El Paso, State of Colorado, Criminal Actions 91CR2019 and 92CR503 for First Degree Trespass and Bond Jumping, in violation of Title 18, United States Code, Section 922(g)(3).

2

## COUNT IV - POSSESSION WITH INTENT TO
## DISTRIBUTE METHAMPHETAMINE

On or about January 4, 1995, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, to wit, .1412 grams of methamphetamine hydrochloride or "ice", in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT V - UNLAWFUL CARRYING OF A FIREARM EQUIPPED
## WITH A FIREARM SILENCER DURING A DRUG
## TRAFFICKING CRIME

On or about January 4, 1995, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did unlawfully and knowingly use and carry a firearm, to wit, a Beretta, Model 71, .22 caliber semi-automatic pistol, Serial# 64311, equipped with a firearm silencer, during and in relation to a drug trafficking crime, to wit, Possession with Intent to Distribute Methamphetamine, in violation of Title 18, United States Code, Section 924(c).

## COUNT VI - UNLAWFUL POSSESSION OF A FIREARM
## BY A FUGITIVE FROM JUSTICE

On or about January 4, 1995, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and unlawfully possess a firearm in and affecting commerce and did receive a firearm which had been shipped and transported in interstate and foreign commerce, to wit, a Beretta, Model 71, .22 caliber semi-automatic pistol, Serial# 64311, said defendant at that time being a fugitive from justice, to wit, in Bench Warrants pending in the District Court, County of El Paso, State of Colorado, Criminal Actions 91CR2019

3

1   and 92CR503 for First Degree Trespass and Bond Jumping, in

2   violation of Title 18, United States Code, Section 922(g)(3).

3        DATED this _29th_ day of March, 1995.

4                              A TRUE BILL.

5                              _Robert A. Sablan_

6                              ROBERT A.C. SABLAN
                               Deputy Foreman

7

8   FREDERICK A. BLACK
9   United States Attorney
    Districts of Guam and CNMI

10

11  By: _John N. Glang_
12       JOHN N. GLANG
         Assistant U.S. Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                               4

(NOTE: Identify Changes with Asterisks (*))

FILED
DISTRICT COURT OF GUAM

MAY 22 1996

MARY L. M. MORAN

# United States District Court
## District of Guam

UNITED STATES OF AMERICA
v.

## HONOFRE JAMES OLIVA CHARGUALAF

### AMENDED JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number: **1:95CR00054-001**

**Date of Original Judgment:** 05/10/1996
*(or Date of Last Amended Judgment)*

JOAQUIN C. ARRIOLA, JR., Court Appointed
Defendant's Attorney

### Reason for Amendment:

— Correction of Sentence on Remand (Fed. R. Crim. P. 35(a))

— Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

— Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(c))

— Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36))

— Modification of Supervision Conditions (18 U.S.C. § 3563(c) or 3583(e))

— Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

— Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

— Direct Motion to District Court Pursuant to — 28 U.S.C. § 2255,
— 18 U.S.C. § 3559(c)(7), or — Modification of Restitution Order

## THE DEFENDANT:

— pleaded guilty to count(s) _____

— pleaded nolo contendere to count(s) _____
which was accepted by the court.

√ was found guilty on count(s)  * I, II, III, IV, V, VI, VII, VIII
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. ' 922 (a)(4) | Unlawful Transportation of a Machine Gun | 05/12/1994 | I |
| 18 U.S.C. ' 922 (o)(1) | Unlawful Possession of a Machine Gun | 10/27/1994 | II |
| 18 U.S.C. ' 922 (g)(2) | Unlawful Possession of a Firearm by a Fugitive From Justice | 10/27/1994 | III |
| 21 U.S.C. ' 841 (a)(1) | Possession with Intent to Distribute Methamphetamine | 01/04/1995 | IV |

See Additional Counts of Conviction - Sheet 1.01

The defendant is sentenced as provided in pages 2 through __5__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

— The defendant has been found not guilty on count(s) _____

Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: 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 | 05/10/1996 |
| Defendant's Date of Birth: 04/04/1969 | Date of Imposition of Judgment |
| Defendant's USM No.: 01107-093 | |

Defendant's Residence Address:

163 N. Fanguluan St.

Malojloj          GU     96917

Signature of Judicial Officer

JOHN S. UNPINGCO
U.S. DISTRICT COURT JUDGE
Name & Title of Judicial Officer

Defendant's Mailing Address:

163 N. Fanguluan St.

Malojloj          GU     96917

MAY 22 1996
Date

DEFENDANT:       HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:     1:95CR00054-001

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| * 18 U.S.C. ' 924 (c) | Unlawful Use or Carrying of a Firearm During and in Relation to a Drug Trafficking Crime | 01/04/1995 | V |
| * 18 U.S.C. ' 922 (g)(2) | Unlawful Possession of a Firearm by a Fugitive from Justice | 01/04/1995 | VI |
| * 21 U.S.C. ' 841 (a)(1) | Possession With Intent to Distribute Methamphetamine | 03/30/1995 | VII |
| * 21 U.S.C. ' 841 (a)(1) | Possession With Intent to Distribute Methamphetamine | 03/30/1995 | VIII |

DEFENDANT:      HONOFRE JAMES OLIVA CHARGUALAF
CASE NUMBER:   1:95CR00054-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of     44     year(s)

For Counts I, II, III, IV, VI & VII, defendant is to serve an imprisonment term of 120 months to be served concurrently.  Such sentence is imposed so as not exceed the statutory maximums in Counts I, II & III.

For Count VIII, the defendant is to serve an imprisonment term of 168 months to run concurrent with Counts I, II, III, IV, VI & VII.

See Additional Imprisonment Terms - Sheet  2.01

☐    The court makes the following recommendations to the Bureau of Prisons:




☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

  ☐  -at _____  a.m./p.m.  on _____

  ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐    before 2 p.m. on _____

  ☐    as notified by the United States Marshal.

  ☐    as notified by the Probation or Pretrial Services Office.


# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____  to _____

at _____, with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

DEFENDANT:        HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:      1:95CR00054-001

# ADDITIONAL IMPRISONMENT TERMS

For Count V, defendant is to serve an imprisonment term of 30 years to run consecutive to all remaining counts.

AO 245C (Rev. 3/95) Amended Judgment in a Criminal      Sheet 3 - Supervised Release                    (NOTE: Identify Changes with Asterisks (*))

Judgment-Page __3__ of __5__

DEFENDANT:        HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:      1:95CR00054-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of         5      year(s)

This term consist of terms of three years for each of Counts I, II, III, IV, VI & VII. For Count VIII, the defendant is to serve a term of five years (5) supervised release to run concurrent to the remaining counts.

See Additional Supervised Release Terms - Sheet 3.01

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245C (Rev. 3/95) Amended Judgment in a Criminal r    Sheet 5, Part A - Criminal Monetary Penalties    (NOTE: Identify Changes with Asterisks (*))

Judgment—Page    4    of    5

DEFENDANT:    HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:    1:95CR00054-001

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | Assessment | | Fine | | Restitution |
|---|---|---|---|---|---|
| Totals: | $    400.00 | $ | | $ | |

If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . .    $ _____

**The defendant is ordered to pay the assessment fee immediately.**

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of    $ _____

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court determined that the defendant does not have the ability to pay interest and it is ordered that:

The interest requirement is waived.

The interest requirement is modified as follows:

# RESTITUTION

The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |
| | | | |

|  | Totals: | $ _____ | $ _____ |
|---|---|---|---|

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after

AO 245C (Rev. 3/95) Amended Judgment in a Criminal C    Sheet 6 - Statement of Reasons          (NOTE: Identify Changes with Asterisks (*))

Judgment-Page __5__ of __5__

DEFENDANT:        HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:      1:95CR00054-001

# STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

## OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

Counts I, II, III & IV are considered one group of closely related counts.  Highest adjusted offense level for

See Additional Factual Findings and Guideline Application Exceptions - Sheet 6.01

## Guideline Range Determined by the Court:

Total Offense Level:        __33__

Criminal History Category:        I

Imprisonment Range:    __135__ to __168__ months

Supervised Release Range:    __5__ to __5__ years

Fine Range:  $ __17,500.00__ to $ __4,000,000.00__

☐ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution:  $ _____

☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐ For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☒ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

Grouping of Counts provide for penalty exceeding 24 mos. Count VIII requires mandatory minimum 10 yrs.  Count V requires 30 yrs. consecutive sentence

## OR

☐ The sentence departs from the guideline range:

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following specific reason(s):

DEFENDANT: HONOFRE JAMES OLIVA CHARGUALAF
CASE NUMBER: 1:95CR00054-001

## ADDITIONAL FACTUAL FINDINGS AND GUIDELINE APPLICATION EXCEPTIONS

that group is 25.